UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN FLOOD,

        Plaintiff,

                                Civil Case No. 13-11813

v.                            Honorable Linda V. Parker

EQUIFAX INFORMATION
SERVICES, LLC, and
NATIONAL CREDIT SYSTEMS, INC.,

        Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 23] AND GRANTING DEFENDANT NATIONAL CREDIT SYSTEM, INC.'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 24]

On April 23, 2013, Plaintiff John Flood ("Plaintiff") initiated this lawsuit against Defendants Equifax Information Services, LLC ("Equifax") and National Credit Systems, Inc. ("NCS") alleging negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.  The matter initially was assigned to the Honorable Lawrence P. Zatkoff.  By stipulation, Plaintiff's claims against Equifax were dismissed on August 15, 2013, and Equifax was dismissed from this lawsuit.  Plaintiff and NCS filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 on February 17 and 18, 2014, respectively. (ECF Nos. 23, 24.)  The motions have been fully briefed.  On

May 28, 2014, Judge Zatkoff reassigned the matter to the undersigned pursuant to

Administrative Order 14-AO-030.  On August 25, 2014, this Court issued a notice

informing the parties that it is dispensing with oral argument with respect to the

parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(e).  (ECF

No. 30.)  For the reasons that follow, the Court now denies summary judgment to

Plaintiff and grants summary judgment to NCS.

## I.      Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is

appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P.

56(a). The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56

mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden

of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine

issue of material fact."  *Id*. at 323. Once the movant meets this burden, the

"nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

Courts evaluate cross-motions for summary judgment under the same standard. *La Quinta Corp. v. Heartland Props.*, LLC, 603 F.3d 327, 335 (6th Cir. 2010) (citing *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).  When faced with cross-motions for summary judgment, each motion is examined on its own merits. *Id.*

## II.     Factual and Procedural Background

The facts relevant to this matter are generally not in dispute.  On or about December 13, 2010, Eagles Landing of Washington Apartments ("Eagles Landing") placed a past due account for amounts owed by a tenant, John Flood, with NCS for collection.  (Def.'s Mot., Ex. A at 11.)  Eagles Landing forwarded to NSC details regarding the amount it claimed was due and owing ($5,408.00) by "John Flood" with a last known address of 60520 Campground, Apt. #3, Washington Township, MI 48094.  (*Id.* at 16; Ex. B at 12/22/2010 Notes.)

NCS mailed correspondence to John Flood's last known address, but the mailing was returned to NCS as undeliverable.  (*Id.*, Ex. B at 12/23/2010 Notes.)  NCS obtained an updated address of 60786 Hayes Road, Ray, MI 48096, but correspondence subsequently sent to this address also was returned to NCS for unknown reasons.  (*Id.*)

On May 11, 2012, Plaintiff's wife, Kim Flood ("Mrs. Flood"), contacted NCS for the first time.  She advised NCS' representative that the amount NCS was trying to collect belonged to her son, John Flood, but was being reported on the credit report of her husband, John Flood (i.e., Plaintiff).  (*Id.* at 5/11/2012 Note; Ex. A at 18, 22.)  NCS' representative asked Mrs. Flood to fax NCS documentation showing that the debt did not belong to Plaintiff.  (Pl.'s Mot., Ex. B ¶ 9.)  At the

conclusion of Mrs. Flood's call, NCS' representative marked the account as disputed for credit bureau records and an account investigation was immediately commenced. (Def.'s Mot., Ex. A at 18-19, 22.)  NCS' representative, Lee Wheeler, then called Eagles Landing to report Plaintiff's dispute and to request additional documentation regarding the person listed on the debt. (*Id*.; Ex. B at 5/11/2012 Note.)

On May 17, 2012, a representative of Eagles Landing named Bridget advised NCS that the John Flood that owed the debt had a date of birth of 1990. (*Id*. Ex. B at 5/17/2012 Note.)  Bridget agreed to fax supporting documentation to NCS verifying the debtor's social security number and date of birth so NCS could update the account. (*Id*.)  In the meantime, Mrs. Flood faxed NCS a copy of Plaintiff's driver's license so NCS could compare his date of birth with her son's date of birth. (Pl.'s Mot., Ex. B ¶ 10.)

After receiving the documentation from Eagles Landing, NCS updated the account and all corresponding credit reporting to reflect the correct social security number and date of birth for the individual owing the debt. (Def.'s Mot., Ex. B at 5/30/2012 Note; Ex. A at 24.)  This was an internal update and the updated information also was provided to the consumer reporting agencies. (*Id*.)  NCS heard nothing else regarding Plaintiff until the following year. (*Id*. Ex. B.)

5

On or about March 25, 2013, Mrs. Flood called NCS to advise that the debt to Eagles Landing was appearing again on Plaintiff's Equifax Information Services LLC ("Equifax") credit report.  (*Id.* at 3/25/2013 Note.)  NCS' representative confirmed that NCS' account notes contained the correct social security number and date of birth for Plaintiff's son– not Plaintiff– and that NCS already had reported the correct information to the consumer reporting agencies and requested that the information be deleted from Plaintiff's credit report.  (*Id.*; Ex. A at 26-27.)  NCS' representative advised Mrs. Flood to submit a dispute with Equifax directly. (*Id.*, Ex. B at 3/25/2013 Note.)

On or about April 2, 2013, NCS received an automated credit dispute verification ("ACDV") form generated when Mrs. Flood lodged her complaint with Equifax.  (Def.'s Mot., Ex. C.)  NCS responded that the social security number listed on the form was "different" than the social security number in NCS' records but indicated, although incorrectly, that the date of birth supplied on the form was the "same."  (*Id.*)  Plaintiff filed this lawsuit several weeks later.

In his Complaint, Plaintiff alleges that NCS negligently (Count I) and willfully (Count II) violated the FCRA, 15 U.S.C. § 1681s-2(b).  (Compl. ¶¶ 18-29.)  He claims that he "suffered damages, mental anguish, suffering, humiliation and embarrassment" as a result of NCS' violations.  (*Id.* ¶¶ 22, 28.)  Plaintiff seeks

6

recovery of those damages and the costs and attorneys' fees incurred in bringing

this lawsuit for NCS' alleged negligent violation of the statute.  (*Id*. ¶ 23.)  He also

seeks statutory and punitive damages for NCS' willful violation.  (*Id*. ¶¶ 28-29.)

Plaintiff filed his pending summary judgment motion on February 17, 2014,

claiming that there is no genuine issue of material fact with respect to whether

NCS falsely validated that he and the person owing the debt share the same date of

birth, despite knowing that this was not correct.  (ECF No. 23.)  Plaintiff argues

that NCS' conduct constitutes a willful violation of the statute or, at least, a

negligent violation.  In his motion and his affidavit submitted in support of the

motion, Plaintiff does not identify any damages suffered as a result of NCS'

conduct.  (*See id*., Ex. A.)

In response to Plaintiff's motion (ECF No. 25) and in its cross-motion for

summary judgment (ECF No. 24), NCS argues that the evidence reflects nothing

more than a "clerical error" rather than a knowing, intentional, or reckless

disregard of its duties under the FCRA.  NCS contends that it therefore is entitled

to summary judgment on Plaintiff's claim alleging a willful violation of the statute.

NCS argues that it also is entitled to summary judgment with respect to Plaintiff's

claim alleging a negligent violation of the statute because Plaintiff fails to provide

proof of actual damages suffered as a result of the alleged violation.  NCS argues

that Plaintiff's vague assertions in response to interrogatories that he sustained

"emotional suffering" (*see* Def.'s Mot., Ex. D.) are insufficient to prove his claim

for emotional damages.  NCS notes that Plaintiff identifies no witnesses or

documents to corroborate his actual damages claims.  (*Id.*)

In his response to NCS' motion, Plaintiff contends that NCS willfully or

recklessly failed to comply with the FCRA's provisions when it validated that

Plaintiff and the debtor share the same date of birth but knew this was false.  With

respect to damages, Plaintiff asserts in his response brief that he attempted to

refinance his home mortgage with Charter One Bank in November 2012 and,

although Charter One Bank verbally approved his application, he was later told

that he did not qualify for a better interest rate because of a problem with his credit

report.  (Pl.'s Resp. Br. at 11.)  Plaintiff claims that the only negative item on his

credit report was the trade line reported by NCS.  (*Id.*)  Plaintiff also asserts that he

suffered emotional harm as a result of NCS' violation.

## III.    Applicable Law

Plaintiff alleges that NCS violated § 1681s-2 of the FCRA.  This section

requires furnishers of credit information to report accurate information to consumer

reporting agencies regarding a consumer's credit.  15 U.S.C. § 1681s-2(a)(1)(A).

It further sets forth a furnisher's responsibilities upon receiving notice from a

credit reporting agency that a consumer disputes the information a furnisher has

provided:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(A)-(D).

Although subsection (a) requires a furnisher to provide correct and accurate

information to consumer reporting agencies, there is no private right of action to

enforce the prohibition on knowingly furnishing inaccurate information. *See* 15

9

U.S.C. § 1681s–2(c), (d); *see also Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002); *see also Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 358-59 (6th Cir. 2005). Where a furnisher negligently violates subsection (b), a consumer may sue but can prevail only if he or she suffered actual damages as a result of the violation.  15 U.S.C. § 1681*o*; *see also Kaplan v. Experian, Inc.*, No. 09-10047, 2010 WL 2163824, at *3 (E.D. Mich. May 26, 2010) (unpublished) ("under § 1681*o*, proof of actual damages is an essential element of a negligence claim") (citing *Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 448 (5th Cir. 1998); *Matise v. Trans Union Corp.*, No. 3:96-cv-3353, 1998 WL 872511 (N.D. Tex. 1998); *Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702, 708 (6th Cir. 2009)).  The plaintiff must show that the defendant's violation of the statute "*caused* the loss of credit or some other harm."   *Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 360-61 (6th Cir. 2005) (emphasis added) (citing *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001)).

Proof of actual damages is not necessary where the Plaintiff can establish a willful violation of the FCRA.  Under the statute, statutory and punitive damages, as well as reasonable attorney fees and costs, are recoverable where the Defendant committed a willful violation.  15 U.S.C. § 1681n.  In *Safeco Insurance Co. of*

10

*America v. Burr*, 551 U.S. 47 (2007), the United States Supreme Court held that a "willful" violation of the FCRA is either an intentional violation or a violation committed in reckless disregard of the duties imposed under the statute. *Id*. at 52, 56-57. The Court adopted the common law understanding of "the term recklessness . . . as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.' " *Id*. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

## IV.   Analysis

### A.   Plaintiff's Willful Violation Claim

Plaintiff presents no evidence from which a reasonable jury could conclude that NCS acted knowingly or in reckless disregard of its duties under the FCRA, as opposed to carelessly or accidentally, when it confirmed on or about April 2, 2013, that the date of birth of Plaintiff and the debtor were the same. As NCS points out, when Mrs. Flood first reported the incorrect inclusion of the debt on her husband's credit report, it promptly complied with its obligations under the FCRA: NCS marked the account as disputed, investigated the veracity of the disputed information, reviewed the information provided by Mrs. Flood and Eagles Landing, reported the results to the consumer reporting agencies, and corrected the error in its records. Despite its efforts and for unknown reasons, the debt again

11

appeared on Plaintiff's Equifax credit report in early 2013. When this was brought to NCS' attention by Mrs. Flood, NCS reviewed the information it had and confirmed that the correct social security number and date of birth for the debtor were recorded and that a deletion request had already been made. NCS also advised Mrs. Flood to file a dispute directly with Equifax. Such conduct does not reflect a knowing or reckless disregard of NCS' obligations under the FCRA.

The facts of this case are distinguishable from those that this Court reviewed where the evidence was found to support a willful violation of the FCRA. *See, Saunders v. Branch Banking & Trust Co. Of Virginia*, 526 F.3d 142 (4th Cir. 2008) (finding evidence of a willful violation where the furnisher intended not to report the plaintiff's dispute of his account, despite the furnisher's records reflecting the ongoing dispute); *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 610 (E.D. Pa. 2012) (finding an issue of fact as to whether the defendant willfully violated the FCRA where the plaintiff "introduced evidence that [the d]efendant's investigative procedures never permit deletion of accounts, always result in verifying the disputed account as 'charged-off,' and never result in marking an account as disputed[]" and where the defendant's analysts were allotted five to ten minutes for investigations of disputes); *see also Akalwadi v. Risk Mgmt. Alt., Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004) (finding a genuine issue of material fact with respect to

whether the furnisher willfully violated the FCRA where there was no evidence of what, if anything, the furnisher did to investigate the plaintiff's dispute). Although Plaintiff cites several cases in the section of his briefs discussing "willful" violations of the FCRA, in none of those cases did the court find evidence of willful conduct (and in fact, most of the cases do not even address whether the defendant's conduct was willful). *See Goodby v. Wells Fargo Bank, NA*, 599 F. Supp. 2d 934, 944 (S.D. Ohio 2008) (concluding that "[w]hile conducting an account review of [the p]laintiff's credit information is a violation under a reasonable reading of the FCRA's terms, there is nothing in the record which shows that [the d]efendant ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless"); *Alston v. Wells Fargo Bank, NA*, No. 8:12-cv-03671, 2013 U.S. Dist. LEXIS 119172 (S.D. Md. Aug. 22, 2013) (unpublished) (Pl.'s Mot., Ex. M) (setting forth furnisher's duties when notified of a dispute, but not finding a violation of those duties by the defendant, much less a willful violation); *Ausar-El v. Barclay Bank Del.*, No. 12-0082, 2012 U.S. Dist. LEXIS 106572 (D. Md. July 31, 2012) (unpublished) (finding that the plaintiff failed to allege facts sufficient to show that the defendant did not comply with its duties under § 1681s-2(b), but declining to grant the defendant's motion to dismiss because the plaintiff "may yet be able to do so"); *Edwards v. Equable*

13

*Ascent, FNCL, LLC*, 11-cv-2638, 2012 U.S. Dist. LEXIS 54112 (D.N.J. Apr. 16,

2012) (unpublished) (Pl.'s Mot., Ex. N) (granting the defendant's motion to

dismiss the plaintiff's action under the FCRA where the plaintiff failed to allege

that he notified a consumer agency of disputed information); *Markovskaya v. Am.*

*Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340 (E.D.N.Y. 2012) (granting

summary judgment to the defendant-furnisher on the plaintiff's FCRA claim where

there was no evidence that a credit reporting agency reported the plaintiff's dispute

to the defendant-furnisher); *Mazza v. Verizon Washington, DC, Inc.*, 852 F. Supp.

2d 28 (D.D.C. 2012) (finding sufficient allegations in the plaintiff's complaint to

state a violation of the FCRA, but not addressing willfulness issue).

For these reasons, the Court concludes that the evidence does not show

NCS' willful violation of the FCRA.  Plaintiff therefore is not entitled to judgment

as a matter of law on Count I of his Complaint.  NCS, however, is entitled to

summary judgment with respect to this claim.

### B.    Plaintiff's Negligent Violation Claim

As stated, Plaintiff can prevail on his claim alleging that NCS negligently

violated § 1681s-2(b) only if he presents evidence of actual damages resulting from

the violation.  As previously set forth, Plaintiff asserts in response to NCS' motion

that NCS' violation of the FCRA caused him emotional harm and damaged his

14

ability to get a better interest rate when he attempted to refinance his home mortgage in November 2012.

Plaintiff presents only his affidavit in support of these asserted damages. With respect to his alleged emotional harm, Plaintiff states: "As a result of National Credit Systems, Inc.'s reporting of the trade line concerning Eagle Landing of Washington on my Equifax credit report I suffered anger and frustration, as well as being insulted and inconvenienced."  (Pl.'s Resp., Ex. A ¶ 15.)  In support of the alleged injury to his ability to refinance his home mortgage, Plaintiff states:

> 12.   In November of 2012, I attempted to refinance my home mortgage with Charter One Bank.
>
> 13.   Although Charter One Bank verbally approved the refinance, I was later told that I did not qualify for a better interest rate because of a problem with my credit report.
>
> 14.   The only negative item on my credit report has been the trade line reported by National Credit Systems, Inc.

(*Id*. ¶¶ 12-14.)  To support the assertion in paragraph fourteen of his affidavit, Plaintiff attaches two pages of his purported credit report to his response brief.[1]

---

[1]There is no information on Plaintiff's Exhibit "K" to indicate that it is a credit report, that it is Plaintiff's credit report, or that the debt listed is the only account in collection listed on the credit report.  Further, the only date on the exhibit is a fax date of April 12, 2013.  Therefore, even if it is Plaintiff's credit

(continued...)

(Pl.'s Resp., Ex. K.)

Actual damages for a violation of the FCRA may include mental distress damages. *Bach*, 149 F. App'x at 361 (citing *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995)). Plaintiff, however, presents insufficient evidence in support of his motion and in response to NCS' motion to show that he suffered such damages.

Courts in this Circuit and elsewhere have imposed a strict standard of proof for the recovery of emotional damages " 'because they are so easy to manufacture.' " *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)); *see also Kaplan*, 2010 WL 2163824, at *5 (quoting *Sarver*); *Tallon v. Lloyd & McDaniel*, 497 F. Supp.2d 847, 850 (W.D. Ky. 2007) (same); *Garrett v. Trans Union, LLC*, No. 2:04-cv-00582, 2006 WL 2850499, at *11 (S.D. Ohio 2006) (unpublished) (same). Pursuant to this standard:

> [W]here the plaintiff's own testimony is his only evidence of emotional damages, he must explain the circumstances of his injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from

---

[1](...continued)
report, it proves nothing as to what Plaintiff's credit report reflected in November 2012.

16

the defendant's action.

*Rohn v. Commercial Recovery Sys., Inc.*, No. 13-cv-10780, 2013 WL 6195578, at

*3 (E.D. Mich. Nov. 26, 2013) (Murphy, J.) (unpublished) (internal quotation

marks and citations omitted); *see also Wantz v. Experian Info. Solutions*, 386 F.3d

829, 834 (7th Cir. 2004), abrogated on other grounds by *Safeco Ins. Co.*, 551 U.S.

47; *McIntosh v. Check Resolution Serv., Inc.*, No. 10-14895, 2011 WL 1595150, at

*4 (E.D. Mich. Apr. 27, 2011)  (Duggan, J.) (unpublished); *Harding v. Check

Processing, LLC*, No. 10-2359, 2011 WL 1097642, at *2 (N.D. Ohio Mar. 22,

2013) (unpublished).  The Sixth Circuit likewise has stated that "[a]n injured

person's testimony alone may suffice to establish damages for emotional distress

*provided* that [the person] reasonably and sufficiently explains the circumstances

surrounding the injury and does not rely on mere conclusory statements."  *Bach*,

149 F. App'x at 361 (citing *United States v. Balistrieri*, 981 F.2d 916, 931-32 (7th

Cir. 1992)).  Further, when discussing whether emotional distress damages are

recoverable under the Fair Credit Billing Act, the Sixth Circuit noted the Second

Circuit's decision in *Casella* with respect to the FCRA and held that such damages

are available only "in *extreme* cases." *Butler v. Sterling, Inc.*, No. No. 98-3223,

2000 WL 353502, at *8 (6th Cir. 2000) (emphasis added) (unpublished) (citing

*Casella*, 56 F.3d at 474).

17

Plaintiff's statements in his affidavit in support of his request for emotional distress damages are merely conclusory. Further, this matter does not involve "extreme" circumstances or facts where emotional distress reasonably could be expected as a result of the defendant's conduct. Thus Plaintiff fails to present sufficient evidence in his motion and in response to NCS' motion to support his claim for emotional distress damages.

Plaintiff also fails to show that NCS' violation of the FCRA damaged his ability to refinance his mortgage. NCS correctly argues that Plaintiff improperly uses his affidavit to claim, for the first time, damages never revealed in discovery. A party cannot submit an affidavit that contradicts the parties' earlier sworn testimony in order to create a genuine issue of fact sufficient to survive summary judgment unless the party explains the contradiction or resolves the disparity. *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906-908 (6th Cir. 2006) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). However, even if the rule did not apply here, this asserted claim of damages to Plaintiff's refinancing opportunity claim fails for reasons not identified by NCS.

First, Plaintiff's proof is based on inadmissible hearsay. Generally, the rule is that "evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded." *Alpert v. United States*,

18

481 F.3d 404, 409 (6th Cir. 2007) (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir.1997)).  Plaintiff's statements as to what he was told by Charter One Bank is being offered for the truth of the matter asserted.[2]  The Supreme Court has held that a party opposing a summary judgment motion need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp.*, 477 U.S. at 324) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred."). When a party proffers inadmissible evidence in opposition to a summary judgment motion, however, the party "must show that [he] *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (emphasis in original) (citation omitted).  Plaintiff offers nothing to suggest that he can produce admissible evidence to support the assertions in his affidavit.  Notably, he did not identify the Charter One Bank refinancing application in response to NCS' discovery requests concerning applications for

---

[2]The statements would not support his claim of damages were they not true.

19

credit or financing made during the last five years or where asked to identify the actual damages suffered and he has not listed any representative from Charter One Bank on his witness list.  (*See* Def.'s Mot., Ex. D [Pl.'s Discovery Responses]; ECF No. 21 [Pl.'s Witness List].)

Second, even if Plaintiff presented admissible proof regarding his attempt to refinance his mortgage, he cannot show that this alleged harm resulted from NCS' violation of the FCRA.  According to Plaintiff, he attempted to refinance his mortgage through Charter One Bank in November 2012.  It was only in April 2013, however, that NCS inaccurately confirmed that Plaintiff's and the debtor's date of birth were the same in response to the ACDV (the alleged violation).  There is no evidence that NCS committed some other violation of the FCRA prior to November 2012 that resulted in Plaintiff's alleged harm.[3]

For the above reasons, the Court concludes that the evidence submitted fails to show that Plaintiff suffered actual damages as a result of NCS' alleged violation of the FCRA.  As such, his claim alleging a negligent violation of the statute is subject to dismissal as a matter of law.

## V.    Conclusion

_____

[3]NCS may have reported inaccurate information regarding Plaintiff's credit initially; however, the undisputed evidence reflects that the misinformation was corrected well before Plaintiff sought refinancing.

The undisputed evidence does not support a finding that NCS engaged in a willful violation of the FCRA.  Plaintiff fails to present sufficient evidence to create an issue of fact with respect to whether he suffered actual damages as a result of NCS' alleged violation and therefore NCS is entitled to summary judgment with respect to Plaintiff's claim alleging a negligent violation of the FCRA as well.

Accordingly,

**IT IS ORDERED**, that Plaintiff's Motion for Summary Judgment (ECF No. 23) is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendant National Credit Systems, Inc.'s Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

S/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 26, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 26, 2014, by electronic and/or U.S. First Class mail.

S/ Richard Loury
Case Manager

21